U UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MARIA ANGELA VASQUEZ,** | § § § § | |
| **Plaintiff,** | | |
| v. | § § § § § § § § | **CIVIL ACTION NO. C-11-45** |
| **NUECES COUNTY, TEXAS & RAMIRO CANALES,** | | |
| **Defendants.** | § | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Maria Angela Vasquez ("Plaintiff") brought this employment discrimination action against Defendants Nueces County, Texas and Ramiro Canales' (collectively "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Texas Commission on Human Rights Act (TCHRA), TEXAS LABOR CODE §§ 21.001 *et seq.*; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*; and 42 U.S.C. §§ 1981 & 1983.

Now pending before the Court are Defendants' Motion to Strike Plaintiff's First Amended Original Complaint [D.E. 23] (Dkt. No. 24), Second Rule 12(e) Motion for More Definite Statement (Dkt. No. 25), Second Motion to Dismiss Ramiro Canales in his Official Capacity (Dkt. No. 26), Second Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. No. 27), and Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. No. 28), to which Plaintiff has responded (Dkt. No. 30).

**I. Motion to Strike Plaintiff's First Amended Original Complaint [D.E. 23]**

When Plaintiff filed her Motion to Amend Complaint on May 13, 2011 (Dkt. No. 17), she attached a document entitled First Amended Original Complaint as Exhibit 1. In granting

1

Plaintiff's motion for leave to amend, the Court specifically referred to Docket No. 17-1 in its Memorandum Opinion and Order: "Plaintiff's First Amended Original Complaint repleads Plaintiff's claims under the Fifth and Fourteenth Amendments to explicitly state that her due process rights were denied. (Dkt. No. 17, Ex. 1, ¶ 48.)." (Dkt. No. 22 at 2.) Six days later, Plaintiff filed another document entitled Plaintiff's First Amended Original Complaint (Dkt. No. 23) that was substantively different from Docket No. 17-1. Namely, Docket No. 23 consisted of four additional pages, including Plaintiff's allegation that she is appealing an order of the Nueces County Civil Service Commission upholding her termination. (Dkt. No. 23 ¶¶ 59—61.)

In their Motion to Strike, Defendants state that they did not give Plaintiff consent to file Docket No. 23. Plaintiff also did not seek leave of Court in order to substitute Docket No. 23 in place of Docket No. 17-1, but instead filed Docket No. 23 without the Court's permission. Because Docket No. 23 was filed in violation of Federal Rule of Civil Procedure 15, the Court finds that Defendants' motion to strike should be **GRANTED**. *See* FED. R. CIV. P. 15(a)(2) (providing that after 21 days following service, "a party may amend its pleading only with the opposing party's written consent or the court's leave")

## II. Rule 12(e) Motion for More Definite Statement

### A. Legal Standard

"If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)." *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

### B. Analysis

In their Motion for More Definite Statement, Defendants complain that there is language throughout Plaintiffs' First Amended Original Complaint (Dkt. No. 17-1) that may or may not be in reference to a claim for intentional infliction of emotional distress (IIED). Although couched

as a motion for more definite statement, Defendants do not move the Court to order Plaintiff to replead any claim for IIED. Instead, Defendants "pray that the Court strike language from Plaintiff's First Amended Original Complaint [D.E. 17-1 or D.E. 23] relating to a possible claim for intentional infliction of emotional distress and issue a ruling that Plaintiff cannot bring an IIED claim against Defendants." (Dkt. No. 25 at 5.) In response, Plaintiff does not indicate whether or not she intends to bring a cause of action for IIED, but instead states that her pleadings "are sufficient to place the Defendants on notice of her claims . . . ." (Dkt. No. 30 at 24.)

The Court finds that Plaintiff has not alleged a cause of action for IIED against Defendants. However, to the extent Defendants seek a ruling that Plaintiff is forever barred from bringing an IIED claim against Defendants, such relief is outside the scope of Rule 12(e) and is therefore **DENIED**.

**III. Motion to Dismiss Ramiro Canales in his Official Capacity**

Defendant Ramiro Canales ("Canales") is the Tax Assessor/Collector and Voter Registrar for Defendant Nueces County ("the County"). Because Plaintiff sued Canales in his official capacity only, Defendants move to dismiss Plaintiffs' claims against Canales as redundant.

"It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'" *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (alteration in *Koseoglu*)). Indeed, "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166 (1985).

The Court finds that Plaintiff's official capacity claims against Canales need not proceed because the County has also been named as a party, and no purpose is served by allowing the

3

duplicative claims to advance. Thus, Defendants' motion to dismiss Plaintiff's claims against Canales in his official capacity is **GRANTED**.

**IV. Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

    **A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a case against it for lack of jurisdiction over the subject matter. When federal courts consider questions of subject matter jurisdiction, the precedent regarding its fundamental importance is clear: "It is a fundamental principle that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "[A]bsent jurisdiction conferred by statute, [federal courts] lack the power to adjudicate claims." *See Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. 'This is the first principle of federal jurisdiction.'" *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998) (quoting HART & WECHSLER, THE FEDERAL COURTS AND THE FEDERAL SYSTEM 835 (2d ed. 1973)). Under Fifth Circuit precedent, a case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

    **B. Analysis**

Defendants move to dismiss Plaintiff's discrimination and retaliation claims under Title VII, the TCHRA, and the ADEA[1] for lack of subject-matter jurisdiction on the grounds that

---

[1] In all respects material to Defendants' Motion to Dismiss, Title VII and the TCHRA are the same. *See Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex. 2001) (Texas courts look to federal statutes,

4

Plaintiff failed to exhaust her administrative remedies before filing suit. Specifically, Defendants complain that, at the time Plaintiff filed her Original Complaint in this action, neither the Equal Employment Opportunity Commission (EEOC) nor the Texas Workforce Commission-Civil Rights Division (TWC-CRD) had informed Plaintiff of her right to sue.

There are two statutory prerequisites for filing a Title VII action in federal court: (1) the filing of a complaint with the EEOC; and (2) the receipt of the statutory notice of the right to sue. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue). However, as the Fifth Circuit has made clear, the receipt of a right-to-sue letter is not a jurisdictional prerequisite:

> First, we note that 42 U.S.C. s 2000e-5(f)(3), the relevant jurisdictional provision, does not limit jurisdiction to those cases in which a plaintiff has received a right-to-sue letter. Nor does section 2000e-5(f)(1), which requires that plaintiffs receive statutory notice of the right to sue before bringing a Title VII action, speak in jurisdictional terms. Moreover, nothing in the legislative history indicates that Congress intended the receipt of a right-to-sue letter to constitute a jurisdictional prerequisite. Thus, we are not inclined to deviate from the plain meaning of the statute.

*Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1216—17 (5th Cir. 1982).

Because the receipt of a right-to-sue letter is not a jurisdictional prerequisite, Defendants' motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

---

regulations, and cases for guidance in adjudicating claims under the TCHRA). Likewise, the Fifth Circuit has repeatedly looked to Title VII decisions to interpret the ADEA. *See, e.g.*, *Thornbrough v. Columbus and Greenville Ry Co.*, 760 F.2d 633, 638 n.4 (5th Cir. 1985); *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir. 1983); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 557—58 n.1 (5th Cir. 1983). Moreover, in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 567 (1979), the Supreme Court instructed that where the source of a section in the ADEA parallels Title VII, the two statutes are to be construed consistently.

**V. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

   **A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737—38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

   B. Analysis

      1. Discrimination

   Defendants first move to dismiss Plaintiff's claims under Title VII, the TCHRA, and the ADEA under Rule 12(b)(6) because Plaintiff failed to exhaust her administrative remedies. As in their Rule 12(b)(1) motion to dismiss, Defendants complain that, at the time Plaintiff filed her Original Complaint in this action, neither the EEOC nor the TWC-CRD had informed Plaintiff of her right to sue.

   The record shows that although Plaintiff had not received right-to-sue letters from the EEOC or TWC-CRD at the time she initiated this action, Plaintiff subsequently received right-to-sue letters from both agencies before filing her First Amended Original Complaint. (*See* Dkt. No. 30, Exs. 8 & 9.) Although Plaintiff's Original Complaint would have been subject to dismissal without prejudice under Rule 12(b)(6) when filed, the Fifth Circuit's decisions in *Pinkard* and *Clanton* "make[] clear that the subsequent receipt of [a] right-to-sue letter cures the defect with respect to the original filing of this action." *Pinkard*, 678 F.2d at 1218 (citing *Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084 (5th Cir. 1981)).

   However, Plaintiff's claim for discrimination on the basis of race is subject to dismissal because she did not identify such a claim before the EEOC or TWC-CRD, and she is therefore precluded from raising it now. One of the central purposes of an EEOC charge is to place an employer on notice of "the existence and nature of the charges against [it]." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984); *see also Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711—12 (5th Cir. 1994). Plaintiff did not include the word "race" in her EEOC and TWC-CRD charges, and she did not check the "race" box in the "Discrimination Based On" portion of either charge. (Dkt.

7

No. 30, Exs. 4 & 5.) Therefore, Plaintiff's claims for racial discrimination under Title VII and the TCHRA are **DISMISSED**.

### 2. Retaliation

To state a claim of retaliation under the Title VII, the TCHRA, or the ADEA, a plaintiff must set forth facts showing: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 484 (5th Cir. 2008); *Roberson v. Alltel Info. Services*, 373 F.3d 647, 655 (5th Cir. 2004). Not all activity is "protected." Instead, employees are protected from retaliation for opposing acts of discrimination or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding or litigation under Title VII, the TCHRA, or the ADEA.

An "adverse employment action" refers to an action that affects the "terms, conditions, or privileges of employment." *See Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990). "In [the Fifth] [C]ircuit, a plaintiff must show that the employer made an ultimate employment decision to establish that the plaintiff has suffered an adverse employment action." *Williams v. U.S. Dep't of Navy*, 149 Fed. App'x 264, 269 (5th Cir. 2005) (citing *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531 (5th Cir. 2003)). Ultimate employment decisions include hiring, discharging, promoting, compensating, and granting leave. *Id.*

Plaintiff claims "that the conduct of the Defendants is in violation of Texas and federal law and is in retaliation of Plaintiff's filing a grievance pursuant to the Rules and Regulations of the Civil Service Commission and in violation of the Civil Service Commission rules and regulations." (Pl. 1st Amended Original Compl. ¶ 35.) Plaintiff further claims that after she "filed charges of discrimination with the Texas Commission on Human Rights and the Equal Employment Opportunity Commission on September 20, 2010 . . . the Defendants cancelled the

8

hearing on Plaintiff's grievance before the Nueces County Civil Service Commission." (*Id*.) Plaintiff also states that her "grievance hearing is being unreasonably delayed and set on dates and times that Plaintiff's counsel cannot be available is [*sic*] retaliation because Plaintiff filed a charge of discrimination." (*Id.* ¶ 24.)

With respect to Plaintiff's claim that Defendants' conduct in delaying her hearing constitutes retaliation, under existing Fifth Circuit precedent, denial of a grievance hearing does not qualify as an actionable adverse employment action. *Gregory v. Texas Youth Comm'n*, 2004 WL 2244241, *1 (5th Cir. 2004) (denying employee access to internal grievance process not an ultimate employment decision); *Lynch v. Baylor Univ. Med. Ctr.*, 2006 WL 2456493, *9 n.8 (N.D. Tex. 2006) (denial of internal grievance procedure does not constitute an adverse employment action).

The only conduct alleged against Defendants that could fall within the definition of "adverse employment action" is Plaintiff's termination. However, Plaintiff did not file a grievance with the Nueces County Civil Service Commission until one week after she was terminated from employment on April 6, 2010. (Pl. 1st Am. Original Compl. ¶¶ 19, 20.) Likewise, Plaintiff did not file Charges of Discrimination with the TWC-CRD and EEOC until September 21, 2010—more than five months after her termination. (*Id.* ¶ 21.) Because Plaintiff could not have been terminated in retaliation for any conduct that occurred after her termination, no causal link exists between the "protected activity" and her termination. As such, Plaintiff's claims for retaliation under Title VII, the TCHRA, and the ADEA are **DISMISSED**.

### 3. Hostile Work Environment

Both Title VII and the TCHRA prohibit employers from discriminating against any individual based on race, color, religion, sex, or national origin. A plaintiff who asserts a hostile work environment claim under either law must establish that: (1) she belongs to a protected

9

class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). Assuming, *arguendo*, that a claim for hostile work environment under the ADEA is legally cognizable in this circuit,[2] in order to state such a claim, a plaintiff must allege that the protected class to which she belongs is being an individual forty years of age or older. *McNealy v. Emerson Elec. Co.*, 121 Fed. App'x 29, 34 (5th Cir. 2005).

To affect a term, condition, or privilege of employment, the harassing conduct "'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain*, 534 F.3d at 479 (quoting *Lauderdale v. Tex. Dept. of Criminal Justice*, 512 F.3d 157, 163 (2007)) (alteration in original). Whether an environment is hostile or abusive enough to support a hostile work environment claim depends on a totality of circumstances. *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655—56 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

When examining the totality of the circumstances, a court should focus on such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.*; *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). The work environment must also be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that

---

2. The Fifth Circuit "'ha[s] never held that the ADEA contemplates hostile work environment claims.'" *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 178 n.5 (5th Cir. 2011) (quoting *Mitchell v. Snow*, 326 Fed. App'x 852, 854 n.2 (5th Cir. 2009)). It "ha[s] only assumed without deciding that it does." *Id.*

the victim in fact did perceive to be so." *Aryain*, 534 F.3d at 479 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Here, Plaintiff alleges that Defendants created a hostile work environment by:

- Improperly and wrongfully creating faux disturbances and setting up confrontational meetings to make false accusations against the Plaintiff.

- Conducting disciplinary action in a confrontational manner in the "boiler room" atmosphere by publicly confronting Plaintiff and making false accusations in the presence of and within the hearing of other employees and the general public.

- Publically ordering Plaintiff to the "office" whereby Defendants yell and speak in a loud voices intentionally so the "reprimanding" can be heard outside the supervisor or director's office, then falsely accusing Plaintiff as the one who is yelling when in fact it is the Defendants [*sic*] supervisors who are yelling at Plaintiff.

- [W]ithholding documents and/or information from Plaintiff and then accusing Plaintiff of failing to complete the document that was withheld, all done within the hearing of other employees and the general public.

- Unnecessarily and improperly having sheriff deputies posted at the conference room during the meeting where Plaintiff was terminated and then placing Plaintiff under surveillance as she was leaving the building instilling the fear that she would be escorted from the building by armed law enforcement personnel . . .

(Pl. 1st Am. Original Compl. ¶ 46(a)—(e).)

Plaintiff does not allege that Defendants' conduct was severe, that it happened on more than one occasion, or that it interfered with her work performance. In fact, the conduct about which Plaintiff complains all occurred on March 30 and 31, 2010 and related to the actions of Plaintiff's supervisors during the meeting in which she was terminated. Finally, and most importantly, Plaintiff does not allege that the harassment was based on her race, color, religion, sex, national origin, or age. Accordingly, Plaintiff's hostile work environment claims under Title VII, the TCHRA, and the ADEA are **DISMISSED**.

**4. 42 U.S.C. § 1983—Due Process**

In order to state a claim under 42 U.S.C. § 1983 arising from the Fifth and Fourteenth Amendment's guarantee of procedural due process, a plaintiff must allege that she was deprived of a life, liberty, or property interest without the process that was due. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 & n.3, 542 (1985). To state a violation of the Fifth and Fourteenth Amendment's guarantee of substantive due process, a plaintiff must allege that she was deprived of a life, liberty, or property interest in an arbitrary and capricious manner. *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993). Not all property interests are protected, however. To have a property or liberty interest protected by the Fifth and Fourteenth Amendments, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff alleges that Defendants violated the Fifth and Fourteenth Amendments when they "directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants:

- In their attempt to intimidate Plaintiff by posting armed law enforcement outside the conference room when terminating Plaintiff and then placing Plaintiff under surveillance to instill the fear of being taken into custody or being unlawfully detained or being escorted from a public building without probable cause, justification or reasonable suspicion that Plaintiff has or was about to commit a crime or criminal activity or a disturbance.

- In arbitrarily setting hearings and notifying Plaintiff and her counsel of hearings with the Civil Service Commission at times that the Plaintff [*sic*] and/or her counsel cannot be available.

- Refusing and failing to set a grievance hearing before the Civil Service Commission in a timely manner or unreasonably delaying setting and hearing Plaintiff's grievance.

- Failing to give Plaintiff the full time period to respond to the grievance process and then taking adverse action without giving Plaintiff her entitlement to the grievance process.

(Pl. 1st Am. Original Compl. ¶ 54(a)—(d).)

The Court first notes that Plaintiff's claims under the Fifth Amendment's due process clause must necessarily fail, as the Fifth Amendment only applies when a constitutional deprivation is caused by a federal actor. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

With respect to Plaintiff's claims under the Fourteenth Amendment, Plaintiff does not state whether Defendants violated her right to substantive due process or procedural due process. Plaintiff also fails to allege that she had a liberty interest, what that liberty interest was, or how Defendants deprived her of that liberty interest in an arbitrary and capricious manner and/or without due process of law. Likewise, Plaintiff does not allege that she had a property interest, what that property interest was, or how Defendants deprived her of that property interest in an arbitrary and capricious manner and/or without due process of law. To the extent Plaintiff intended to allege that she had a property interest in her job, Plaintiff has also failed to allege what Texas law entitles her to a claim of a property interest in her job. *Saucedo-Falls v. Kunkle*, 299 Fed. App'x 315, 319—20 (5th Cir. 2008) ("A protected property interest in governmental employment must be created by an independent source, such as state law; it is not automatically an incident of all public employment.")

Because Plaintiff has failed to allege that Defendants deprived her of an identifiable liberty or property interest that is protected under the Fourteenth Amendment, Plaintiff's due process claims under 42 U.S.C. § 1983 are **DIMISSED**.

### 5. 42 U.S.C. § 1981

42 U.S.C. § 1981 prohibits employment discrimination on the basis of race. *Johnson v. Railway Express Agency*, 421 U.S. 454, 459—60 (1975). Specifically, § 1981 provides that "[a]ll

persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Because § 1981 itself does not provide an avenue for suit against a local government entity, the exclusive means by which a plaintiff may bring an action against a local government entity for an alleged § 1981 violation is to bring a claim pursuant to § 1983. *See Oden v. Okitebbeha County, Miss.*, 246 F.3d 458, 462—63 (5th Cir. 2001).

Claims of race-based discrimination brought under § 1981 are governed by the same framework applied to claims of employment discrimination brought under Title VII. *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (citing *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n.2 (5th Cir. 1996)). To state a cause of action for employment discrimination under § 1981, a plaintiff must allege that: (1) she is a member of a racial minority; (2) her employer had an intent to discriminate on the basis of race; and (3) the discrimination concerned "the making and enforcing of a contract." *See Bellows v. Amoco Oil Co.,* 118 F.3d 268, 274 (1997) (citing *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994)).

Here, Plaintiff alleges that "Defendants [*sic*] conduct and discrimination constitutes deliberate, intentional discrimination, committed deliberately, intentionally, capriciously, willfully, and wantonly, and with malicious intent entitling plaintiff to recover actual damages and attorney fees under the Civil Rights Act of 1991, 42 U.S.C. §1981a, for the wrongful conduct of the Defendants…" (Pl. 1st Amended Original Compl. ¶ 57.) Plaintiff does not invoke 42 U.S.C. § 1983, she alleges no facts to support a claim of intentional racial discrimination, and she fails to allege the existence of an employment contract.

Because Plaintiff has alleged no contractual employment relationship, any alleged racial discrimination is governed by Title VII. As the Fifth Circuit has stated, "It is the rule of this Court that consideration of an alternative remedy brought under § 1981 is necessary only if its

violation can be made out on grounds different from those available under Title VII." *Page v. U.S. Industries, Inc.*, 726 F.2d 1038, 1042 (5th Cir. 1984). Because Plaintiff has not alleged facts of intentional racial discrimination distinct from those necessary to allege a Title VII cause of action, the Court finds that Plaintiff's claim under §1981 should be **DISMISSED**.

**V. Conclusion**

For the reasons set forth above, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Strike Plaintiff's First Amended Original Complaint [D.E. 23] (Dkt. No. 24) is **GRANTED**. Docket No. 23 is ordered **STRICKEN**, and the Clerk is directed to file Docket No. 17-1 as Plaintiff's First Amended Original Complaint;

2. Defendants' Second Rule 12(e) Motion for More Definite Statement (Dkt. No. 25) is **DENIED**;

3. Defendants' Second Motion to Dismiss Ramiro Canales in his Official Capacity (Dkt. No. 26) is **GRANTED**;

4. Defendants' Second Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Dkt. No. 27) is **DENIED**, and

5. Defendants' Second Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. No. 28) is **GRANTED** in part and **DENIED** in part. Plaintiff's claims for racial discrimination under Title VII and the TCHRA; retaliation and hostile work environment under Title VII, the TCHRA, and the ADEA; and violations of 42 U.S.C. §§ 1981 and 1983 are hereby **DISMISSED**.

**SIGNED** this 6th day of February, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE